[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Josephine Badillo and Jeffrey Nelson were intermarried on June 29, 1991. One child, Alexandra Marie Nelson, was born to the wife on January 31, 1995. A judgement of dissolution of the marriage was entered by the Court (Hammer, J.) on September 19, 1996. At that time the Court awarded the parents joint custody of the minor child with the primary physical residence of the child to be with the mother. The Court also incorporated into its judgement a written separation agreement entered into by the parties. One section of that agreement is particularly relevant to this proceeding. Paragraph five of the separation agreement is a comprehensive understanding setting forth the cooperative, efforts agreed to by the parties regarding the upbringing of their child.
This case now comes before the Court on a Post Judgement Motion for Modification filed by the Plaintiff seeking a modification of the custody, visitation and child support orders entered by the Court at the time of the dissolution of the marriage. The basis for the motion is the Plaintiffs desire to CT Page 8013 relocate to the State of Florida with her minor child.
The Defendant filed an objection to Plaintiffs plan to relocate the child to Florida. He has also filed his own Post Judgement Motion for Modification in which he seeks to become the primary custodial parent of the minor child.
Our Supreme Court has recently set forth the criteria that apply to cases in which a custodial parent seeks to relocate a minor child to another state. "A custodial parent seeking permission to relocate bears the initial burden of demonstrating, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, and (2) the proposed location is reasonable in light of that purpose. Once the custodial parent has made such a prima facie showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child." Ireland v. Ireland, 246 Conn. 413, 429 (1998)
With respect to a determination of whether the proposed relocation is in the best interest of the child, the Connecticut Supreme Court has directed the trial courts to take into consideration the following factors: "[E]ach parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements." (Internal citations omitted). Ireland v. Ireland,246 Conn. 413, 41-432 (1998). Additionally, the trial court may consider "the negative impact, if any, from continued or exacerbated hostility between the custodial and noncustodial parents, and the effect that the move may have on any extended family relationships."Id. At 432.
A hearing on the post judgement motions was held on June 10, 1999. At that hearing testimony was received from the Plaintiff, the Defendant, the paternal grandfather of the minor child and the paternal aunt of the minor child. After carefully considering and weighing the evidence presented at the hearing, and particularly after assessing the credibility of the witnesses, the court finds the following facts to have been proven. CT Page 8014
The Plaintiff custodial parent, Josephine Badillo, resides with her four-year-old child, Alexandra, in a two-bedroom condominium which she rents in South Windsor, Connecticut. Ms. Badillo, who is a graduate of the University of Connecticut, is employed as a manager with Lord and Taylor Department Stores. She has been an employee of Lord and Taylor for the past five and one-half years. At the time of the dissolution of the marriage the Plaintiff held the position of Area Sales Manager with Lord and Taylor. Subsequent to the dissolution of the marriage, and continuing until January 1998, her work hours were mainly during the day plus two nights per week and some weekends. In January 1998 she was promoted to her current position of Manager of Support Services. Her current work hours are generally 8:00 a.m. to 5:30 p. m. with some additional weekend duties. As a Manager of Support Services the Plaintiff is considered to be in training for a position as Operations Manager with Lord and Taylor.
The Plaintiffs articulated career goal is to become an elementary school teacher. Although she claims that she cannot afford to make such a career change while living in Connecticut, she has produced no evidence nor persuasive argument in support of that claim. She represents to the Court that she has an employment and living arrangement opportunity in Orlando, Florida which will permit her to eventually return to college to obtain teacher certification. She also wishes to be closer to her family who reside in Florida.
Her plan is to accept job offer with the Walt Disney World Company as a Retail Guest Manager. Her hours of work in that position would generally be five days per week, including two nights per week and two weekends per month. She intends to work for Walt Disney World on a full time basis for two years and then she hopes to enter graduate school and continue to work for Walt Disney World on a part time basis while attending school. The Plaintiffs proposed salary with Walt Disney World is $39,000 per year. That is $5,000 per year less than what she is currently earning with Lord and Taylor. However, she expects to be able to save money by living rent free with her child and her twenty-two-year-old sister in a three-bedroom house that her parents plan on building in the Orlando area. She also anticipates lower cost of living, day care and health insurance by living in Florida. The plaintiffs sister, who is a full time college student, would presumably be available to help care for the child. CT Page 8015
While the plaintiff has looked into schooling and day care for her daughter in Orlando, there is considerable uncertainty as to where the child will live for at least the first five or six months following the move to Florida. The construction of the parent's house is not anticipated to be completed before the end of November 1999. The parents are currently living in London, England but they anticipate relocating to Orlando in two years at which time they too would live in the new house. Until the house is ready for occupancy the Plaintiffs interim plan is to reside with her two half brothers, who live in a three-bedroom apartment in the Orlando area, or to live in a hotel until she can lease an apartment, or seek to temporary housing through Walt Disney World. It would appear to the Court that staying in a hotel room with a four-year-old child for any length of time would be less than an ideal living arrangement. It is fair to conclude that the Plaintiffs short term Florida housing plan for her child and herself is unresolved, at best.
Another area of uncertainty is Plaintiffs goal of obtaining teacher certification which is her primary reason for moving to Florida. Other than making preliminary inquiries about transferring her University of Connecticut college credits to a college or university in Florida, the plaintiff has acquired very little information concerning the requirements necessary for obtaining teacher certification. She has not been accepted into or even applied for entry into a teacher certification program in Florida, nor has she apparently made any inquiry into the possibility of obtaining teacher certification in Connecticut. There is no evidence that she qualifies for or will be accepted into a teacher certification program in Florida. Her long range goal of becoming an elementary school teacher appears to be more whimsical than realistic at this time.
The Defendant noncustodial parent is employed as a Senior Programmer with Conning Company with a current salary of $38,000 per year. His salary at the time of the dissolution was approximately $25,000 per year. He is entitled to take two weeks of vacation per year. In addition to his employment, the Defendant is attending college on a part time basis in an effort to earn a Bachelor Degree in Management Information Science. He resides in a two-bedroom condominium which he owns in South Windsor, Connecticut.
Mr. Nelson has been actively involved in the agreed upon shared parenting plan with Ms. Badilla. The parties live near CT Page 8016 each other In South Windsor. Alexandra generally visits with her father during the week and spends overnight weekend visits with him. Alexandra has her own room in her father's condominium. Since January 1999 the father has taken care of the child on weekends when the mother was working. The Defendant participates with Alexandra in light sport activities, social events, as well as church and school functions. He also facilitates her interaction with other paternal relatives, including her young cousins. The parties share holidays with the child as well as special events such as birthdays. It is apparent to the court that these are not token visits. The degree of the father's involvement with Alexandra is substantial. The Plaintiff testified that the Defendant is "an excellent dad."
The Defendant proposes that if the mother wishes to move to Florida that the Court appoint him as the custodial parent of the child. The Defendant's sister, Lisa Grivers, testified that she has two children ages seven and eight, and that she does not work outside of the home. She is willing to provide daily care for Alexandra in the event custody is given to the Defendant.
After considering and weighing all of the evidence, as well as assessing the credibility of the witnesses, that Court finds that the plaintiff has proven by a fair preponderance of the evidence that the relocation is for a legitimate purpose, inasmuch as it is not for spiteful or malevolent reasons. However, the Court finds that the custodial parent has not proven by a fair preponderance of the evidence that the proposed location is reasonable in light of the purpose given for the proposed relocation. The Court is not persuaded that the Plaintiff has made any reasonable inquiry about the prospect or requirements of obtaining teacher certification in Florida, nor has she explored the possibility of obtaining teacher certification in Connecticut. Her goal is laudable but how or whether she can actually achieve her goal, in Florida or in Connecticut, has not been adequately or realistically explored by the Plaintiff. This is not a situation in which the plaintiff has been accepted into a college or university program of study nor has she been offered career enhancing employment in another state. The proposed position with Walt Disney World is designed by the plaintiff to be a temporary job, not a career move. The educational purpose of the move to Florida is nebulous, at best.
The Plaintiff and the Defendant are two loving, caring and supportive parents who have made a concerted effort to share the CT Page 8017 obligations and pleasures of parenting their four your old child following the dissolution of their marriage. There is no discernable acrimony between the parents. They each have responded to the needs of the child and to the needs and circumstances of each other in caring for Alexandra. There appears to be a close, loving relationship between the parents and the child, as well as between the child and her paternal relatives.
All of this was set in motion by the parties when they entered into a separation agreement at the time of the dissolution of their marriage. It is clear that the joint parenting agreement was designed by the parties to achieve a continued close physical and emotional relationship between each parent and child. It is also clear that in reaching this agreement the parties gave considerable thought and planning as to their combined roles in raising their daughter.[1] The joint parenting plan appears to have been very successful in this case.
The Court finds that relocating the child to Florida would have a significant negative affect the quality of the relationship that has been developed and currently exists between the child and the noncustodial parent, and would effectively terminate the child's developing relationships with her paternal aunt and paternal cousins. Such a move would also effectively nullify the court ordered detailed shared parenting agreement of the parties. Given the tender age of the child, combined with the physical distance of the child living in Florida and the noncustodial parent living in Connecticut, the opportunities for frequent meaningful visits would be minimal. Such a relocation will all but destroy the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements, and such a move will most certainly result in a substantial and significant decrease in the quantity and quality of the child's future contact with the noncustodial parent. Logic and common sense would suggest that frequent contact is more important in maintaining a strong relationship between a noncustodial parent and a young child than it is between a noncustodial parent and an older child. The adage, "out of sight, out of mind," is especially apropos to very young children.
After considering all of the evidence the Court finds, for the reasons stated herein, that: (1) the Plaintiff has not proven by a fair preponderance of the evidence that the proposed CT Page 8018 relocation to the State of Florida is reasonable in light of the purpose given for the proposed relocation, and (2) the Defendant has proven by a fair preponderance of the evidence that it is not in the best interest of this young child to be dislodged from the nurturing, stable relationship that she has with both her father and mother for the unclear purpose and uncertain outcome associated with the proposed relocation to Florida. Accordingly, it is the order of the court that the minor child, Alexandra Marie Nelson, is not to be relocated to the State of Florida, at this time.
The Plaintiff's motion for modification of child support is granted. The Court finds that there has been a significant increase in the Defendant father's income since the date of dissolution. Therefore, in accordance with the child support guidelines, it is the order of the Court that the Defendant father pay child support to the Plaintiff mother in the amount of $115 per week beginning with the month of July 1999.
The Defendant's motion for a change of the court ordered primary residence of the minor child is denied. The child's primary residence shall remain with the Plaintiff mother.
All other orders entered by the court at the time of dissolution shall remain in effect.
Terence A. Sullivan Superior Court Judge